The defendant appeals from his convictions, after a jury trial, of seven counts of assault and battery, G. L. c. 265, § 13A, and three counts of indecent assault and battery on a child under age fourteen, G. L. c. 265, § 13B, involving a total of four separate victims. We affirm.
Background. In 2015, the defendant was charged with thirteen counts of indecent assault and battery on a child under age fourteen, and one count of indecent assault and battery, for tickling, hugging, licking, or touching the breasts or buttocks of four young girls: A.F., A.S., S.F., and L.S.[3] The cases were joined for trial. On the morning of trial, without objection, the judge allowed the Commonwealth's motions to amend the complaints, converting seven of the counts of indecent assault and battery on a child under age fourteen to simple assault and battery.[4] At the close of the Commonwealth's case, the defendant's motion for required findings of not guilty was denied. The theme of the defense was that the allegations were fabricated. The jury returned verdicts of guilty on ten counts, detailed infra to the extent necessary, and not guilty on four counts.
1. Sufficiency of the evidence. The defendant challenges the sufficiency of the evidence as to three of his convictions. We reject each challenge.
First, as to his conviction of assault and battery for tickling S.F., the defendant argues that there was insufficient evidence that the touching was nonconsensual because S.F. testified that the tickling was "just horse play" that "made [her] feel fine." This testimony, however, concerned only one incident. S.F. testified that the defendant tickled her "[l]ike every time" she went over to his residence, that she "just got used to it ... it was just reoccurring," but that it made her feel "uncomfortable." This permitted the jury to find that she did not consent. "Although manifest objections by the victim would have made this a simpler case, we do not require an explicit verbal or physical rebuff to prove lack of consent. Instead, we analyze lack of consent based on the totality of the circumstances." Commonwealth v. Shore, 65 Mass. App. Ct. 430, 433 (2006).
Second, as to his conviction of assault and battery for hugging A.F. while tickling her side and waist, the defendant argues, correctly, that there was no evidence of such tickling. Although the verdict slip stated, "Assault and Battery on [A.F.] by reason of a hug with side/waist tickling," the defendant did not object to the verdict slip, and thus we review for whether the absence of evidence of such tickling, coupled with the language of the verdict slip, created a substantial risk of a miscarriage of justice.
"When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense." Commonwealth v. Arias, 78 Mass. App. Ct. 429, 434 (2010). "To prove a violation of G. L. c. 265, § 13A, when the battery at issue is offensive (as opposed to harmful), ... the Commonwealth must prove beyond a reasonable doubt that the defendant, without justification or excuse, intentionally touched the victim, and that the touching, however slight, occurred without the victim's consent." Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 476 (2008). Neither tickling nor any other particular form of touching is an element of the offense, and neither the complaint nor the judge's instructions mentioned tickling. The defendant concedes that there was sufficient evidence that he hugged A.F., and does not question that hugging satisfies the touching element of the offense. Moreover, the defendant cites no case in which the inclusion in a verdict slip of a factual proposition that was neither charged nor proven at trial is enough to invalidate the verdict. In these circumstances, any error did not create a substantial risk of a miscarriage of justice.
Third, as to his conviction of indecent assault and battery on a child under age fourteen for touching the breast of L.S., the defendant argues that there was insufficient evidence that he touched her actual breast. L.S. testified that the defendant touched her "[n]ear [her] boobs, ... under [her] wire, like wire bra," in her "breast area." This was sufficient. L.S. was thirteen years old at the time of trial, and even younger when the assault occurred. The law does not require a child victim to describe an assault with clinical precision. "We do not require victims to describe with scientific accuracy parts of their anatomy or for children to possess vocabulary and habits of precision that many adults do not command." Commonwealth v. King, 445 Mass. 217, 224 (2005), cert. denied, 546 U.S. 1216 (2006), quoting from Commonwealth v. Moniz, 43 Mass. App. Ct. 913, 914 (1997).
2. Improper appeal to jury's sympathy. The defendant argues that the testimony regarding A.F.'s contemplation of suicide, and the prosecutor's references to that testimony in her opening statement and closing argument, were improper appeals to juror sympathy. Because the defendant did not object at trial, we review any error for a substantial risk of a miscarriage of justice. We see none.
A.F. and her first complaint witness, S.R., each testified that A.F.'s suicidal thoughts prompted her to disclose the assaults to S.R. "A [victim], as well as the first complaint witness, may testify as to the details of the complaint itself and why the complaint was made at that particular time."[5] Commonwealth v. McCoy, 456 Mass. 838, 845 (2010). None of this testimony was inadmissible.[6]
As to the prosecutor's statements regarding this testimony, "[t]he prosecutor properly could have referred in [her] opening to anything that [she] expected to be able to prove by evidence." Commonwealth v. Fazio, 375 Mass. 451, 456 (1978). In a closing argument, "the prosecutor may make a fair response to an attack on the credibility of a government witness." Commonwealth v. Senior, 454 Mass. 12, 17 (2009), quoting from Commonwealth v. Chavis, 415 Mass. 703, 713 (1993). The prosecutor's statements here regarding A.F.'s and S.R.'s testimony stayed well within these bounds and contained no improper emotional appeals.[7] There was no error and thus no substantial risk of a miscarriage of justice.
3. Bad acts evidence. The defendant argues that the judge abused his discretion in admitting several types of what the defendant characterizes as bad acts evidence. Again, because the defendant failed to object at trial, we review any error for a substantial risk of a miscarriage of justice.
a. Statements by defendant. The defendant first challenges three victims' testimony regarding (1) statements he made to them about their weight, buttocks, or breasts,[8] and (2) how those statements made them feel.[9] The statements about the victims' bodies were admissible for the nonpropensity purposes of proving both the defendant's motive-sexual interest-and his pattern of operation: physical abuse coupled with emotional manipulation. See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014) ; Commonwealth v. Morris, 82 Mass. App. Ct. 427, 441 (2012). Assuming without deciding that these statements-particularly the statement made to A.S. at the same time as the defendant assaulted her-constituted bad acts at all,[10] the testimony about them was brief, and their probative value was not outweighed by any risk of unfair prejudice. See Crayton, 470 Mass. at 249 & n.27.
Similarly, the victims' brief testimony about how the defendant's comments made them feel was probative both of their lack of consent and of why they delayed reporting the defendant's abuse. The probative value of this testimony, even if it could somehow be viewed as bad acts evidence, was not outweighed by any risk of unfair prejudice.[11] There was no error and therefore no substantial risk of a miscarriage of justice.[12]
b. Other acts of defendant. The defendant next challenges the admission of testimony that he asked L.S. for a kiss and that he tickled and licked his own daughter. L.S.'s testimony that the defendant had once "asked for a kiss, and [she] said no" was probative of the defendant's motive and L.S.'s lack of consent. That admitting this testimony might have been inconsistent with the judge's reasoning in a previous ruling on a separate bad acts issue[13] did not make the admission an abuse of discretion. In any event, even if we were persuaded that the unfair prejudicial effect of this single brief statement outweighed its probative value, we could not say that the error created a substantial risk of a miscarriage of justice.
S.F.'s testimony about an occasion on which the defendant tickled her and the defendant's daughter-which S.F. herself described as "just horse play" that made her "feel fine"-caused no unfair prejudice to the defendant. We see no need to discuss it further.
A.F.'s testimony that when the defendant licked her face, he also licked his daughter's face, must be considered in light of the daughter's role in the case: she was a witness for the defense who testified that she had never observed any of the conduct alleged by the victims. She specifically denied seeing her father lick A.F.'s face and denied that he had ever licked her own face. A.F.'s testimony to the contrary was admissible for the nonpropensity purposes of challenging the daughter's credibility, motive for testifying, and potential bias. "Because bias, prejudice, and motive to lie are not considered collateral matters, they may be demonstrated by extrinsic proof ...." Commonwealth v. Hall, 50 Mass. App. Ct. 208, 213 n.7 (2000), quoting from Liacos, Massachusetts Evidence § 6.9, at 299-300 (7th ed. 1999). The testimony's probative value was not outweighed by any unfair prejudice to the defendant, and certainly was not outweighed to the extent that the error created a substantial risk of a miscarriage of justice.
c. Defendant's control of his family. Finally, the defendant challenges A.F.'s testimony that he would "rule" his family, that "[e]verything had to go his way" in his home, and that he would not allow his daughter to sleep over at A.F.'s house, whereas A.F. slept at his house "[l]ike every weekend." This testimony was admissible for the nonpropensity purposes of showing the daughter's possible motive or bias in testifying as a defense witness, as well as showing the defendant's preparation or plan for maximizing access to A.F. as a victim. See Crayton, 470 Mass. at 249. The probative value of this evidence outweighed any possible unfair prejudice to the defendant.
4. Claim of nonunanimous verdict. On the charge of indecent assault and battery on a person who had attained age fourteen, with A.S. alleged to be the victim, the jury returned a verdict of guilty of the lesser included offense of simple assault and battery. The defendant claims that because A.S. testified to at least two discrete incidents after she had turned fourteen where the defendant grabbed her buttocks, and where the verdict slip mentioned the touching of buttocks but did not distinguish between those two incidents, the jury may not have been unanimous. Although the judge gave the jury a specific unanimity instruction, to which the defendant did not object, the defendant now argues that the instruction was "not sufficiently forceful" and that the error created a substantial risk of a miscarriage of justice.[14] Commonwealth v. Ramos, 47 Mass. App. Ct. 792, 798 (1999), citing Commonwealth v. Conefrey, 420 Mass. 508, 516 n.11 (1995). We do not agree.
"The Conefrey case ... stands for the proposition that, when the Commonwealth introduces at trial evidence of alternate incidents that could support the charge against the defendant, the jury must unanimously agree on which specific act constitutes the offense charged." Ramos, 47 Mass. App. Ct. at 798, quoting from Commonwealth v. Kirkpatrick, 423 Mass. 436, 442, cert. denied, 519 U.S. 1015 (1996). Here, the judge instructed the jury that they could "find the defendant guilty only if you unanimously agree that the Commonwealth has proved beyond a reasonable doubt that the defendant committed the offense on at least one of the alleged occasions." This instruction conveyed the concept of specific unanimity more clearly than the instruction in Ramos. But even if we were to "assume for purposes of decision that this instruction was not sufficiently forceful to satisfy Conefrey," Ramos, supra, we would see no substantial risk of a miscarriage of justice. As in Ramos, "[b]ased upon the victim's testimony concerning [two] particular and discrete instances of abuse, ... and the defendant's theory of defense (the victim's allegations were false), we conclude that any error in the trial judge's instructions concerning the need for specific unanimity was not 'sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error.' " Id. at 798-799, quoting from Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).
5. Amendment of complaints. The defendant argues for the first time on appeal that the judge erred in permitting the Commonwealth, on the day of the trial, to amend the complaints to convert seven of the charges of indecent assault and battery on a child under age fourteen to simple assault and battery. A judge may allow a complaint to be amended if the amendment (1) would not prejudice either party and (2) is "a matter of form, not substance, meaning that a conviction on the original [complaint] would have barred a subsequent prosecution of the defendant on the amended [complaint]." Commonwealth v. Bougas, 59 Mass. App. Ct. 368, 370 (2003). The Commonwealth concedes that the amendments here were ones of substance[15] but asserts that the defendant was not prejudiced to the extent necessary to create a substantial risk of a miscarriage of justice. We agree.
Trial counsel affirmatively stated his lack of objection to the amendments; on appeal, the defendant acknowledges that they resulted in his being charged with "less serious offense[s]." "It can be readily inferred from the record before us that the lack of objection by defense counsel was based upon a deliberate decision rather than an oversight." Commonwealth v. Bynoe, 49 Mass. App. Ct. 687, 694 (2000). The defendant benefited from the amendments in three ways.
First, by avoiding convictions of indecent assault and battery on a child under age fourteen, he no longer risked being subject to sex offender registration pursuant to G. L. c. 6, §§ 178C - 178Q. Second, although both offenses have the same maximum sentence in the District Court, an assault and battery conviction may result in a fine rather than a house of correction sentence. G. L. c. 265, §§ 13A, 13B. Third, to obtain a conviction of assault and battery here, where the battery was not physically harmful, the Commonwealth had to prove an additional element: lack of consent. See Commonwealth v. Burke, 390 Mass. 480, 483-484 (1983).
The defendant nevertheless claims prejudice inasmuch as the amendments relieved the Commonwealth of the need to prove the touchings were indecent. We are unpersuaded. Even after the amendments, there were still charges of indecent assault and battery on a child under age fourteen pending against the defendant as to each of the victims, yet the defendant did not argue at trial that any of the touchings were not indecent. Instead, his entire defense was that the victims had fabricated all of their allegations. Indeed, it would have been awkward to argue simultaneously both (1) that some of the alleged touchings never occurred and (2) that those that did occur were not indecent. And even if the defendant might have succeeded in obtaining required findings or jury verdicts of not guilty on this latter ground, the Commonwealth would have remained free to prosecute him for assault and battery for the same conduct, as assault and battery is not a lesser included offense of indecent assault and battery on a child under age fourteen. See note 14, supra. For all of these reasons, we conclude that the amendments created no substantial risk of a miscarriage of justice.
Judgments affirmed.

The thirteen counts included three alleged offenses against each of the victims A.F., A.S., and S.F., respectively; and four against victim L.S. The single count of indecent assault and battery involved an alleged offense against A.S. after she had attained the age of fourteen.

These included two counts each as to A.F., A.S., and S.F., and one count as to L.S.

The judge properly instructed the jury on the purpose and use of first complaint evidence before each witness testified, and again at the close of evidence. See King, 445 Mass. at 248.

"[T]he first complaint rule is ... applicable whenever the credibility of an allegation of a sexual assault allegation is at issue." Commonwealth v. Mayotte, 475 Mass. 254, 258 (2016). Here, a theme of the defendant's defense was that the victims were all "telling a story," which they left intentionally vague so as to preclude contradiction.

Defense counsel's lack of objection is a further indication that the prosecutor's comments were not unfairly prejudicial. See Commonwealth v. Toro, 395 Mass. 354, 360 (1985). Similarly, the jury's acquittal of the defendant on one of the three charges involving A.F. suggests that they were not emotionally swayed by testimony or argument regarding her contemplated suicide. See Commonwealth v. Rock, 429 Mass. 609, 616 (1999) ; Commonwealth v. Weeks, 77 Mass. App. Ct. 1, 14 (2010).

A.S. testified that the defendant told her that she "needed to lose weight because [her] boobs were getting big" and then hugged her and slapped her buttocks. A.F. testified that the defendant told her, "When you run, you're going to knock yourself out with your boobs." L.S. testified that he told her that her "butt is getting bigger so [she] need[s] to lose weight and [her] belly was getting bigger."

A.S. testified that the comments made her feel like she "needed to lose weight because [her] boobs were getting big." A.F. testified that she wore sweaters around the defendant, in part because of his comments to her. L.S. testified that his comments made her feel like she was "fat" and "a bad person."

Cf. Commonwealth v. Bradshaw, 86 Mass. App. Ct. 74, 76 n.5, 77 n.6 (2014) (defendant's statement that he was attracted to young boys did not pertain to acts, but to nature of defendant's sexual attraction).

As for the defendant's claim that the prosecutor should not have referenced this testimony in her closing argument, "The Commonwealth may refer in its closing to bad act evidence that was properly admitted." Morris, 82 Mass. App. Ct. at 442. The argument was a permissible response to defense counsel's closing argument, which questioned why the victims had not promptly reported the alleged abuse to their parents.

The same is true of A.F.'s testimony that the defendant said to her, "You would like to have a threesome with my two boys," which made her feel "really weird." The testimony was admissible for the nonpropensity purposes of proving the defendant's sexual motivation, his course of conduct of manipulating A.F., and A.F.'s lack of consent.

In denying the Commonwealth's motion in limine to allow the defendant's neighbor to testify that she had witnessed the defendant slap girls' buttocks, the judge reasoned that the Commonwealth already had sufficient modus operandi evidence by joinder of the cases of the four victims. The judge's ruling that the neighbor could not so testify did not bar any testimony by the victims themselves. See Commonwealth v. Grady, 474 Mass. 715, 720 (2016).

The defendant also suggests that it was error for the verdict slip itself not to distinguish between the two incidents, but we do not regard the authority he relies upon, Commonwealth v. LaCaprucia, 429 Mass. 440, 453 (1999), as establishing such a requirement.

A conviction of indecent assault and battery on a child under age fourteen would not bar a subsequent prosecution for assault and battery, which has the additional element of lack of consent. See Commonwealth v. Niels N., 73 Mass. App. Ct. 689, 694 (2009).